SHIRLEY PARKER, Employee, Plaintiff v. WAL-MART STORES, INC., Employer, INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, Carrier, Defendants

No. COA02-204

(Filed 18 February 2003)

**Workers' Compensation— disability—pre-injury wages**

The Industrial Commission erred in a workers' compensation case by finding that plaintiff employee is temporarily totally disabled because: (1) the full Commission merely found that plaintiff's doctor had not released plaintiff to return to work after her surgery even though she retained the ability to perform a range of activities that may or may not have allowed her to earn her pre-injury wages as a fitting-room attendant or in some other employment; and (2) the full Commission failed to make the proper findings with respect to plaintiff's incapacity to earn pre-injury wages.

Appeal by defendants from opinion and award filed 24 October 2001 by the North Carolina Industrial Commission. Heard in the Court of Appeals 7 January 2003.

*Whitley, Jenkins & Riddle, by J. Christopher Brantley, for plaintiff appellee.*

*Young Moore and Henderson, P.A., by Joe E. Austin, Jr. and Zachary C. Bolen, for defendant appellants.*

BRYANT, Judge.

Wal-Mart Stores, Inc. and Insurance Company of the State of Pennsylvania (collectively defendants) appeal an opinion and award by the Full Commission of the North Carolina Industrial Commission

filed 24 October 2001 awarding Shirley Parker (plaintiff) temporary total disability compensation.

In its opinion and award, the Full Commission found in pertinent part:

1. On 12 October 1996, plaintiff was working as a stocker in the Wal-Mart Store in Jacksonville, North Carolina when she strained her low[er] back while lifting furniture. Thereafter, plaintiff was out of work until August 1997, during which time she received compensation for total disability. When plaintiff did return to work, she was assigned to be a fitting[-]room attendant, where her primary responsibility was to answer telephones.

2. Plaintiff was initially evaluated at Onslow Doctors Care on 14 and 16 October 1996. She was then referred to Dr. Noel Rogers [(Dr. Rogers)] . . . . Dr. Rogers treated plaintiff for her back through 22 November 1996, at which time he referred plaintiff for evaluation by Dr. Robert Abraham [(Dr. Abraham)], a neurosurgeon in Jacksonville.

. . . .

5. . . . [D]efendant-carrier and plaintiff agreed for Dr. [Mark] Roger [(Dr. Roger)] to become the treating physician. . . .

6. Plaintiff returned to work for defendant-employer as a fitting-room attendant in August of 1997. . . .

7. The fitting-room attendant job plaintiff performed for defendant-employer was not created for her but represented a job defendant-employer had available for plaintiff which was suitable to her capacity. In her position as a fitting-room attendant, plaintiff had the capacity to earn wages of at least $314.75 per week[, Plaintiff's stipulated pre-injury average weekly wage].

8. . . . [Plaintiff] consulted Dr. Abraham without referral or authorization on 20 July 1998 for complaints of increased back pain. Four days later . . . Dr. Abraham performed a percutaneous discectomy . . . in an effort to repair a bulging disc . . . .

9. . . . [Plaintiff was] diagnosed . . . with chronic pain disorder. According to plaintiff, water therapy was most beneficial in improving pain symptoms. Plaintiff also used a TENS unit which helped alleviate some of her chronic low[er] back pain.

10. . . . [P]laintiff only had a temporary improvement in her symptoms following surgery.

11. Plaintiff last worked at Wal-Mart on or about 28 August 1998. Since that time, plaintiff has retained the capacity to perform activities including standing for a period of up to 15 minutes, walking of a quarter mile and lifting 20 pounds, provided that she avoids bending, twisting, climbing and reaching above her shoulders.

12. Dr. Abraham has not released plaintiff to return to work.

. . . .

14. Following his evaluation of plaintiff [on 17 July 2000], Dr. Roger indicated that plaintiff is not currently a surgical candidate but did state that he is willing to manage plaintiff's ongoing treatment. Currently, Dr. Roger's only recommendation is that plaintiff continue her pain management treatment . . . . This is the same course of treatment into which Dr. Abraham referred plaintiff in 1997 before her surgery.

Based on these findings, the Full Commission then concluded:

1. Plaintiff sustained an injury by accident . . . .

. . . .

5. Plaintiff has been disabled since she last worked for defendant-employer[,] and plaintiff has not yet reached maximum medical improvement.

6. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation . . . continuing until plaintiff returns to work at the same or greater wages or until further order of the Commission.

---

The issue is whether the Full Commission's findings support its conclusion that plaintiff is disabled.

In a workers' compensation case, the plaintiff has the burden of proving she suffers from a disability as a result of a work-related injury. *Coppley v. PPG Indus., Inc.*, 133 N.C. App. 631, 634, 516 S.E.2d 184, 186 (1999). "Disability" is defined by statute as "incapacity because of injury to earn the wages which the employee was receiv-

ing at the time of injury in the same or any other employment." N.C.G.S. § 97-2(9) (2001). The determination of whether a disability exists is a conclusion of law that must be based upon findings of fact supported by competent evidence. *See Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 594-95, 290 S.E.2d 682, 683 (1982). To support a conclusion of disability, the Industrial Commission must thus find facts indicating: "(1) [the plaintiff] was incapable of earning pre-injury wages in the same employment, (2) she was incapable of earning pre-injury wages in any other employment, and (3) the incapacity to earn pre-injury wages in either the same or other employment was caused by [the] plaintiff's injury." *Coppley*, 133 N.C. App. at 634, 516 S.E.2d at 186 (citing *Hilliard*, 305 N.C. at 595, 290 S.E.2d at 683). Furthermore, as the Industrial Commission must make specific findings of fact as to each material fact upon which the rights of the parties depend, "the Commission's findings must sufficiently reflect that [the] plaintiff produced evidence to prove all three *Hilliard* factors." *Id.* at 635, 516 S.E.2d at 187. If the Industrial Commission's findings are insufficient to determine the rights of the parties, the appellate court may remand the case for additional findings. *See Hilliard*, 305 N.C. at 595, 290 S.E.2d at 684.

In this case, the Full Commission merely found that Dr. Abraham had not released plaintiff to return to work after her surgery even though she retained the ability to perform a range of activities that may or may not have allowed her to earn her pre-injury wages as a fitting-room attendant or in some other employment. *Cf. Radica v. Carolina Mills*, 113 N.C. App. 440, 447, 439 S.E.2d 185, 190 (1994) ("[a]n employee's release to return to work is not the equivalent of a finding that the employee is able to earn the same wage earned prior to the injury"). Because the Full Commission made no finding with respect to plaintiff's incapacity to earn pre-injury wages, this case must be reversed and remanded for entry of findings on plaintiff's evidence pertaining to the *Hilliard* factors. We do not address defendants' remaining assignments of error as they turn on the issue of disability to be decided on remand.

Reversed and remanded.

Judges WYNN and GEER concur.